Edward **WILKERSON** and Marie L. Wilkerson, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. 791-59.

United States District Court
D. New Jersey.
March 6, 1961.

Louis R. Lombardino, Livingston, N. J., Emil E. Mascia, Newark, N. J., for plaintiffs.

Chester A. Weidenburner, Charles H. Hoens, Jr., Newark, N. J., John D. Stobbs, Washington, D. C., for defendant.

MEANEY, District Judge.

This is a suit for refund of taxes allegedly erroneously collected. The alleged error is the refusal of the Internal Revenue Service to allow capital gains treatment to certain amounts received by taxpayer Edward Wilkerson during the year 1954 and reported on his 1954 return.

In 1939 taxpayer secured a patent on a wheel-alignment machine. In 1941 he formed a corporation (Wilco) to manufacture and market the machine. This

corporation was and is wholly-owned by taxpayer. By an agreement dated May 3, 1941, Wilco was given the exclusive right to make, use and sell the product referred to above, along with other products not here relevant. This agreement is crucial. It set forth agreed royalties, indicated that it was to terminate if and when taxpayer ceased to become an employee of Wilco or if and when Wilco "shall sell, assign, pledge or mortgage this license agreement" and "shall not be considered an asset of the said corporation" in the event of bankruptcy or insolvency.

In 1950 and 1952 two other patents were issued to taxpayer, which Wilco used, though there is no written agreement with respect to them.

On January 15, 1954, these three patents were the subject of written assignments from taxpayer to his corporation, and these assignments were recorded in the Patent Office. They described taxpayer as the "sole owner of said patent(s)" and recited that Wilco "is desirous of acquiring the entire interest in the same." On his 1954 income tax return taxpayer reported these three patents as sold in January, 1954 and treated the proceeds received from Wilco as long-term capital gain. The Internal Revenue Service rejected this treatment and assessed a deficiency based on treatment of these proceeds as ordinary income.

The law is clear. Since 1951, sales of patents to wholly-owned corporations yield ordinary income, not capital gain. 26 U.S.C. §§ 1235, 1239, 267(b) (I.R.C. 1954); 26 U.S.C. § 117(q) (I.R.C.1939). Taxpayer admits this. He claims that the sale was in fact made in 1941, under the written agreement outlined above, because that agreement granted all substantial rights under the patent referred to therein. There are pre-1951 cases which hold that a transfer of an exclusive license leads to capital gain, e. g., Champayne v. Commissioner, 26 T.C. 634; Myers v. Commissioner, 6 T.C. 258. However, the evidence as to the actual date of the transfer is definitely contrary to taxpayer's assertions.

*The 1941 agreement* does not even mention two of the three patents in issue—they didn't exist in 1941. As to those, taxpayer claims that "after-acquired patents" were included in the operation of the 1941 agreement, because the corporation in fact used them. This argument is specious. The agreement deals only with the patented products "described and set forth on Schedule A" thereof; it has specific royalty schedules for the patents dealt with. There would seem to be no basis for an inference that future patents would be "sold" without any royalty being specified. As to the third patent, which is mentioned, the terms of the agreement are inconsistent with a present sale. It is called a license agreement, it speaks of royalties, termination, patentee, licensee, and grants the "licensee" the power to sue infringers (which would be superfluous if ownership were being transferred).

*The assignments*, recorded in the Patent Office, clearly indicate a sale on January 15, 1954.

*Taxpayer's 1954 income tax return* listed the three patents in issue as sold in January, 1954. Moreover, taxpayer testified that he had never claimed that he had sold the 1939 patent in 1941. It is asserted by the Government, and not denied by the taxpayer, that taxpayer reported royalty payments from 1941 to 1954 as ordinary income, which is inconsistent with his claim that the sale took place in 1941 and yielded capital gain.

The claim that the sale took place in 1941 appears to be an afterthought relied upon to avoid the provisions of the Internal Revenue Code of 1954, which treat the proceeds of sales to wholly-owned corporations as ordinary income.

The complaint will be dismissed.

Submit an order.

The foregoing shall constitute findings of fact and conclusions of law.